OPINION
{¶ 1} Defendant-appellant, Walter V. Ducey, appeals from a judgment of the Franklin County Municipal Court finding him guilty, pursuant to a bench trial, of domestic violence in violation of R.C. 2919.25(A) and assault in violation of R.C.2903.13. Because the trial court improperly refused to enforce defendant's subpoena for a witness who claimed to have committed the offenses with which defendant was charged, we reverse.
 {¶ 2} During the late evening hours of July 29, 2003, police officers Jeffrey Spencer and Peter Vanderbilt were dispatched to 314 South Cypress Avenue in Columbus, Ohio, to investigate an alleged incident of domestic violence. When the officers reached the residence, several people, including defendant's mother and stepfather, were sitting on the porch and drinking beer. Officers Spencer and Vanderbilt inquired if anybody had been seen fighting, but everyone denied having seen or heard anything.
 {¶ 3} Just as the individuals on the porch were responding, the officers spotted Letha Adkins, who Officer Spencer said was coming down the stairs; she was crying, with "blood on her shirt, a swollen eye, [and] bleeding from her nose." (Tr. 10.) Spencer stated that Adkins was "very upset, crying, bleeding, she's running out of the house." (Tr. 10.) Likewise, Officer Vanderbilt testified "[w]e were standing there talking on the front sidewalk. The front door to 314 South Cypress was wide open. We then — I looked up and saw [Adkins] running from inside the structure out towards us. She was crying. She had very obvious signs of physical abuse. Her right eye was practically swollen shut. She had a little bit of blood about her nose and mouth area and some swelling on her facial area. She came out crying hysterically, and * * * [s]he stated he was inside, at which point we had asked who, and she said Walter Ducey." (Tr. 42-43.)
 {¶ 4} Officers Spencer and Vanderbilt summoned emergency care for Adkins and then entered the residence to pursue defendant; they found no one during the search, but the back door was open. After the officers concluded their search of the premises and Adkins received all necessary medical care, Spencer and Vanderbilt questioned Adkins about the evening's events.
 {¶ 5} According to Officer Spencer, at the time of the interview, Adkins "was having a cigarette and her hands was still shaking and she was still crying at the time. That was half hour, 35, 40 minutes later, somewhere in that range, and she's obviously still afraid or upset." (Tr.12.) Spencer further testified that when he "asked her who did that to her, she said Walter Ducey. I said okay. I said, `can you tell me what happened?' And I believe she said that — I can't remember what they were arguing about; fighting about something. At that point she stated [defendant] pushed her down the stairs and then punched her in the face several times with a closed fist. * * * She said they were staying together, been living together for — I can't remember how long, I think it was a couple years * * *. For [defendant's] information * * * [s]he gave me date of birth." (Tr. 14.) Spencer admitted he was only four or five feet away from Adkins during their 15 to 20 minute interview, yet he failed to smell any odor of alcohol about her breath and noticed no slurred speech or other signs of intoxication.
 {¶ 6} Similarly, Officer Vanderbilt testified Adkins told him that after a heated argument, "Mr. Ducey had pulled her down the basement steps by her hair and struck her several times in the face * * * with a fist." (Tr. 44.) Vanderbilt also stated he was present when Adkins provided Spencer with defendant's date of birth as a method of identification. Vanderbilt further offered that he is personally familiar with defendant and is able to identify defendant by sight, since Vanderbilt has had numerous dealings with defendant for up to four to five years. In addition, Vanderbilt stated he similarly is familiar with Adkins from previous occasions and knew her as defendant's live-in girlfriend. Vanderbilt testified that during the 20-minute interview with Adkins, he was standing "within six feet, sometimes closer" to her and did not smell any odor of alcohol about her person or see any visible signs of intoxication such as slurred speech, disorientation, confusion, or incoherency. (Tr. 107.)
 {¶ 7} After interviewing Adkins and retrieving defendant's data from the LEADS computer, Officer Vanderbilt radioed that defendant was a criminal suspect and that warrants for domestic violence and assault were soon to be filed. Another squad quickly detained defendant, and defendant ultimately was charged with domestic violence and assault.
 {¶ 8} Defendant's trial commenced on August 26, 2003, and ended the following afternoon. During trial, defendant testified on his own behalf, stating that on the day in question, he observed Adkins consume approximately eight to nine shots of whiskey and four Xanax pills at his mother's house on Cypress Avenue during the five hours between 2:30 p.m. and 7:30 p.m. Defendant testified that around 7:30 p.m., a friend came to get him to go to a car show. According to defendant, Adkins accused him of "going to some other girl's house with [his] friends to party," and she added, "[s]orry bastard, I won't be here when you get back." (Tr. 87.) Defendant testified that he left and did not return to the Cypress Avenue residence until 1:30 a.m. on July 30, 2003.
 {¶ 9} Defendant's mother, Sandra Buckta, was subpoenaed to testify. Just prior to trial, Buckta informed both the prosecutor and the public defender that she, not defendant, caused Adkins' injuries. When Buckta was called as a witness, counsel advised the court of Buckta's statements. Because it believed Buckta possibly would offer the same incriminating testimony under oath, the trial court advised Buckta of her rights against self-incrimination and to counsel. Buckta chose to consult with an attorney before testifying further, so the trial court appointed counsel and recessed the trial.
 {¶ 10} When trial resumed the following day, Buckta did not appear and did not call. Despite the public defender's request, the trial court refused either to issue a capias warrant to enforce Buckta's subpoena or to grant a continuance so the defense could file contempt proceedings against her. The trial court further refused to allow Buckta's out-of-court statements into evidence under the hearsay exception for statements against penal interest.
 {¶ 11} On the evidence before it, the trial court concluded the state proved beyond a reasonable doubt all the elements of domestic violence and assault, and the trial court found defendant guilty of both. The charges were merged for sentencing, and the trial court imposed sentence accordingly. Defendant appeals, assigning the following errors:
FIRST ASSIGNMENT OF ERROR: The trial court's failure to issue a capias warrant or to take other measures to secure the testimony of a subpoenaed witness denied appellant his right to compulsory process as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.
SECOND ASSIGNMENT OF ERROR: The court abused its discretion in denying a continuance in order to secure the appearance of a subpoenaed witness.
THIRD ASSIGNMENT OF ERROR: The court erroneously precluded testimony regarding declarations against penal interest by a subpoenaed witness who had absconded.
FOURTH ASSIGNMENT OF ERROR: Erroneous admission of claimed excited utterances denied appellant his right to confrontation secured under the state and federal Constitutions.
FIFTH ASSIGNMENT OF ERROR: The cumulative effect of the errors advanced in this brief entitles appellant to a new trial.
SIXTH ASSIGNMENT OF ERROR: Appellant's convictions were not supported by the evidence and were against the manifest weight of the evidence.
 {¶ 12} Defendant's first and second assignments of error are interrelated, and we address them jointly. They assert the trial court's failure to issue a capias warrant in order to secure Buckta's testimony, or to continue the trial to allow defendant to pursue contempt proceedings against Buckta, denied him his right to compulsory process under the Ohio and United States Constitutions.
 {¶ 13} "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense." Washington v. Texas (1967),388 U.S. 14, 19, 87 S.Ct. 1920. Nonetheless, "[a] trial court may exclude a person from appearing as a witness on behalf of a criminal defendant at trial if the court determines that the witness will not offer any testimony, but merely intends to assert the Fifth Amendment privilege against self-incrimination."State v. Kirk (1995), 72 Ohio St.3d 564, paragraph one of the syllabus.
 {¶ 14} The record here does not disclose whether Buckta intended to assert her Fifth Amendment privilege. Although the trial court advised her of her Fifth Amendment rights, and Buckta chose to consult with an attorney, she did not appear for trial and did not give the trial court the opportunity to inquire whether she would invoke her rights under the Fifth Amendment. The state thus properly concedes the trial court erred in proceeding with defendant's trial under those circumstances. Instead, the trial court should have enforced the subpoena. Once Buckta's presence was secured, the trial court should have inquired in camera whether Buckta intended to invoke herFifth Amendment rights. If she responded affirmatively, then defendant had no right to call her as a witness simply to have her assert her Fifth Amendment rights.
 {¶ 15} Accordingly, on remand, the trial court, through enforcement of the subpoena, should determine whether Buckta intends to testify on behalf of defendant or whether she intends to invoke her Fifth Amendment rights. If she intends to testify on defendant's behalf, then defendant's constitutional right to confrontation was violated in the first trial, and defendant is entitled to a new trial. By contrast, if Buckta intends to invoke her Fifth Amendment rights, then defendant suffered no prejudice from the trial court's failure to enforce the subpoena, and defendant's conviction should be reinstated. Defendant's first and second assignments of error are sustained to the extent indicated.
 {¶ 16} Because we do not know the result of the trial court's inquiry on remand, we address the remainder of defendant's assignments of error. Defendant's sixth assignment of error challenges the sufficiency and manifest weight of the evidence. An analysis of the sufficiency and weight of the evidence, in turn, requires that we resolve defendant's fourth assignment of error in which defendant asserts the trial court erred in admitting the hearsay testimony of Officers Spencer and Vanderbilt: absent their testimony, the state's evidence is insufficient.
 {¶ 17} According to Evid.R. 801(C), "`hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Although Evid.R. 802 provides that hearsay generally is not admissible, Evid.R. 803(2) sets forth an exception for excited utterances, or "statement[s] relating to a startling event or condition made while the declarant [is] under the stress of excitement caused by the event or condition." The excited utterance exception to the hearsay rule exists because excited utterances are the product of reactive rather than reflective thinking and, thus, are believed inherently reliable.State v. Taylor (1993), 66 Ohio St.3d 295, 300. "Reactive excited statements are considered more trustworthy than hearsay generally on the dual grounds that, first, the stimulus renders the declarant incapable of fabrication and, second, the impression on the declarant's memory at the time of the statement is still fresh and intense." Id., quoting 1 Weissenberger's Ohio Evidence (1992), Section 803.16.
 {¶ 18} The admission or exclusion of evidence, including the determination of whether a hearsay declaration should be admitted as an excited utterance, lies in the trial court's sound discretion. State v. Holloway, Franklin App. No. 02AP-984, 2003-Ohio-3298, ¶ 14, 24, citing State v. Sage (1987),31 Ohio St.3d 173, 180, and Roach v. Roach (1992), 79 Ohio App.3d 194,205. The judgment of the trial court will not be reversed absent a clear showing of an abuse of discretion. State v. Scott (June 24, 1997), Franklin App. No. 96APA04-492, citing State v.Hymore (1967), 9 Ohio St.2d 122, 128.
 {¶ 19} In Taylor, the Ohio Supreme Court delineated a four-part test, derived from the common law test for admitting a "spontaneous exclamation," to determine the admissibility of an excited utterance: "(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such dominationcontinued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration." (Emphasis sic.) Id. at 300-301, quoting Potter v. Baker (1955), 162 Ohio St. 488, paragraph two of the syllabus; State v. Myers (Sept. 30, 1999), Franklin App. No. 98AP-1448.
 {¶ 20} Generally, cases that invoke the excited utterance exception to the hearsay rule involve assaults, automobile accidents, and similarly impactful events. Osborne v. KrogerCo., Franklin App. No. 02AP-1422, 2003-Ohio-4368, ¶ 43. Likewise, statements of domestic violence victims have been held to be excited utterances. State v. Cornell (1998),129 Ohio App.3d 106, 114; State v. Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194; Holloway, at ¶ 50-51.
 {¶ 21} Under the facts of this case, we cannot say the trial court abused its discretion in concluding under the first prong of the four-part test that Adkins' reflective faculties were stilled. She had been beaten severely such that her right eye was almost swollen shut, her nose and mouth were bloody, and she had blood on her shirt. She was crying at the scene from the moment the officers noticed her to the time they left. Further, during her interview, Adkins freely gave the officers the name and identification of her assailant, but after she had a chance to think about the situation and the likely consequences, she refused to testify against defendant at trial.
 {¶ 22} Second, the trial court reasonably could conclude Adkins' statements were made before her nervous excitement lost domination over her reflective capabilities. With excited utterances, "[t]here is no per se amount of time after which a statement can no longer be considered to be an excited utterance. The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought. Therefore, the passage of time between the statement and the event is relevant but not dispositive of the question." Taylor,
at 303; Cornell, at 113; see, also, State v. Smith (1986),34 Ohio App.3d 180, 190. "Relevant factors in ascertaining whether the declarant was in a sufficient state of excitement or stress include outward indicia of emotional state such as tone of voice, accompanying actions, and general demeanor." Osborne, at ¶ 46. (Citations omitted.)
 {¶ 23} Although Spencer and Vanderbilt did not interview Adkins until approximately 35 to 40 minutes after the incident, Spencer testified Adkins was "very upset" and "afraid," and he noted Adkins' hands were still shaking and she was still crying. The trial court thus reasonably could conclude Adkins uttered the out-of-court statements before the nervous excitement lost domination over her reflective capabilities.
 {¶ 24} Lastly, under the third and fourth prongs, Adkins' out-of-court statements related to the incident, and Adkins personally observed the matters about which she spoke. The scope of Adkins' statements, which Officers Spencer and Vanderbilt communicated to the court at trial, was limited to the identity of Adkins' attacker and to what happened to Adkins during the attack she sustained. The four prongs of Taylor having been met, the trial court did not abuse its discretion in admitting into evidence the hearsay testimony of Spencer and Vanderbilt under the excited utterance exception to the hearsay rule.
 {¶ 25} Defendant nonetheless contends his confrontation rights under the state and federal constitutions were violated as a result of the trial court's admitting Adkins' out-of-court statements. Evid.R. 806(D), however, states that "[i]f the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination." Despite the provisions of Evid.R. 806(D), defendant did not avail himself of those rights and effectively waived them. Holstein v.Delguidice (Dec. 11, 1986), Cuyahoga App. No. 51306.
 {¶ 26} Because the trial court did not abuse its discretion in admitting Adkins' out-of-court statements into evidence, we consider that evidence in assessing the sufficiency and weight of the state's evidence presented at defendant's trial.
 {¶ 27} When a defendant challenges his conviction as not supported by sufficient evidence, the inquiry focuses primarily upon the adequacy of the evidence and tests whether, as a matter of law, the evidence presented at trial is legally sufficient to sustain a verdict. State v. Thompkins (1997),78 Ohio St.3d 380, 386. With respect to sufficiency, an appellate court must construe the evidence in favor of the prosecution and determine whether such evidence permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, 263, paragraph two of the syllabus; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387. Defendant was convicted of assault under R.C.2903.13(A), as well as domestic violence under R.C. 2919.25(A).
 {¶ 28} R.C. 2903.13(A) prohibits persons from knowingly causing, or attempting to cause, physical harm to another or to another's unborn. Similarly, R.C. 2919.25(A) prohibits persons from knowingly causing, or attempting to cause, physical harm to a family or household member. The statute further defines "family or household member" as "a person living as a spouse," which means "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabitating with the offender, or who otherwise has cohabitated with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(1)(a), (2).
 {¶ 29} The state's evidence demonstrates that after a heated argument with Adkins, defendant either pulled Adkins down the stairs by her hair or pushed her down the stairs, and he struck her several times in the face with a closed fist. Adkins sustained injuries consistent with her statements to the police. In addition, the evidence reveals Adkins and defendant had been living together as a couple for quite some time prior to the incident. From the testimony of Officers Spencer and Vanderbilt, construed in the state's favor, the trial court properly could conclude defendant knowingly caused physical harm to Adkins, his live-in girlfriend.
 {¶ 30} Defendant's sixth assignment of error also challenges the manifest weight of the evidence, primarily for the same reasons he disputes the sufficiency of the evidence. When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt.Thompkins, at 387 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"); Conley, supra. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 31} With the excited utterance evidence presented through the testimony of Spencer and Vanderbilt, the trial court, despite defendant's contrary version of the events, could find beyond a reasonable doubt that defendant committed the offenses with which he was charged. While defendant's testimony created a factual dispute, the trial court, as the finder of fact, was the proper entity to resolve that dispute. The manifest weight of the evidence supports the trial court's verdict. Accordingly, defendant's fourth and sixth assignments of error are overruled.
 {¶ 32} Defendant's third assignment of error asserts the trial court erred in precluding defendant from introducing into evidence Buckta's statements to the prosecution and to defense counsel that she committed the offenses with which defendant was charged. Defendant contends the statements are against penal interest and therefore are admissible under the Evid.R. 804(B)(3) exception to the hearsay rule.
 {¶ 33} Pursuant to Evid.R. 804(B), "[t]he following are not excluded by the hearsay rule if the declarant is unavailable as a witness: * * * (3) Statement against interest. A statement that * * * at the time of its making * * * so far tended to subject the declarant to civil or criminal liability * * * that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability * * * is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Thus, to be admissible under Evid.R. 804(B)(3), not only must the declarant be unavailable, but also corroborating circumstances must indicate the statement's trustworthiness. Karst v.Goldberg (1993), 88 Ohio App.3d 413. Whether to admit the hearsay statement of an unavailable declarant pursuant to Evid.R. 804(B)(3) is within the sound discretion of the trial court.State v. Patterson (1996), 110 Ohio App.3d 264. Implicit in that sound discretion is the broad discretion to decide whether the corroborating circumstances warrant admitting a statement against interest under Evid.R. 804(B)(3). Id.
 {¶ 34} "In Chambers v. Mississippi (1973), 410 U.S. 284,93 S.Ct. 1038, 35 L.Ed.2d 297, the United States Supreme Court listed four factors which indicate that statements against the penal interest of the declarant are sufficiently trustworthy to be admitted into evidence. Those factors are (1) the spontaneity of the statements, (2) whether the statements are corroborated by other evidence, (3) whether the statements are self-incriminating and against penal interest, and (4) whether the declarant was available for cross-examination by the opposing party. Id. at 300-301, 93 S.Ct. at 1048-1049, 35 L.Ed.2d at 311-312. The Ohio Supreme Court has adopted these factors for determining admissibility pursuant to Evid.R. 804. State v. Sumlin (1994),69 Ohio St.3d 105, 110, 630 N.E.2d 681, 685." In re Carter
(1997), 123 Ohio App.3d 532, 540.
 {¶ 35} Within those parameters, the trial court here did not abuse its discretion in refusing to admit under Evid.R. 804(B)(3) Buckta's statements that she committed the crimes at issue in defendant's trial, as the record does not reflect the necessary corroborating circumstances. While Buckta's statement is incriminating, it was not given to the police officers spontaneously when they arrived at defendant's residence and inquired of Buckta; indeed, it was not given to the police at all. Rather, at the time the officers arrived, Buckta offered nothing in response to the officers' inquiry and only made the statement against interest on the day of trial. Further, once she was advised of her rights to counsel and against incrimination, she did not appear for trial, despite defendant's subpoena to her. Cf. Sumlin, supra. Finally, no other evidence in the record corroborates her statement. In re Carter, supra. Because the trial court reasonably could conclude Buckta's statement lacked sufficient indicia of trustworthiness, the trial court did not abuse its discretion in refusing to admit it, either through defendant's testimony or by defendant's calling the assistant prosecutor or defense counsel as a witness. Defendant's third assignment of error is overruled.
 {¶ 36} Defendant's fifth assignment of error asserts the cumulative error in his assigned errors warrants reversal. Because we have overruled defendant's third, fourth and sixth assignments of error, they lend nothing in support of reversal. Our sustaining his first and second assignments of error to the extent indicated is the basis for the reversal. To that extent, his fifth assignment of error likewise is sustained.
 {¶ 37} Having sustained defendant's first, second and fifth assignments of error to the extent indicated, and having overruled his third, fourth and sixth assignments of error, we reverse defendant's conviction and remand his case to the Franklin County Municipal Court where the trial court should enforce the subpoena for Buckta and inquire in camera whether she intends to testify on defendant's behalf. If she responds affirmatively, then defendant is entitled to a new trial consistent with this opinion; if she intends to invoke herFifth Amendment rights, then defendant's conviction may be reinstated.
Judgment reversed and case remanded.
Lazarus, P.J., and Petree, J., concur.