OPINION
{¶ 1} Defendant-appellant, Bobby Gene Summerall, was indicted by the Franklin County Grand Jury on one count of rape, in violation of R.C. 2907.02, one count of attempted rape, in violation of R.C. 2923.02 as it relates to R.C. 2907.02, and one count of kidnapping, in violation of R.C. 2905.01. Appellant's case proceeded to trial by jury on September 8, 2003. The jury convicted appellant of rape and kidnapping. On September 17, 2003, the court conducted both a sexual predator and sentencing hearing. The trial court merged the kidnapping conviction for purposes of sentencing, imposed a sentence of ten years incarceration on the rape offense and classified appellant as a sexual predator.
 {¶ 2} Appellant timely appealed his convictions and presents two assignments of error for our review, as follows:
ASSIGNMENT OF ERROR I
Appellant received ineffective assistance of counsel, as trial counsel did not object to or request a mistrial after it was discovered that. [sic]
ASSIGNMENT OF ERROR II
The trial court commits reversible error when it allows the disclose [sic] of critical evidence to the defense for the first time during voir dire and then fails to either suppress said evidence or discharge the potential jurors and continue the case for the defense to evaluate the impace of the newly disclosed evidence on its case.
 {¶ 3} The facts relevant to this appeal are as follows. On September 20, 2002, appellant was living with his cousin, Deborah Clardy[1] ("Clardy"), Clardy's children, Yazmin,[2]
16, and Cameron, 13, and the victim, Tara Turley ("Turley"), at 2556 Agler Road in Columbus, Ohio. Clardy knew Turley through her daughter Jerron, and had permitted Turley to reside with her until she found suitable housing. Early that morning, sometime between 3:15 and 3:30 a.m., Turley came home from her job at a local bar. Turley went to sleep on a futon in the family room. Turley testified that while there was not a particular sleeping arrangement for those residing at the residence, she and appellant periodically slept in the same room.
 {¶ 4} Turley testified that some time before 5:00 a.m., appellant woke her up and declared that by 5:00 a.m., he was "going to get some pussy." (Tr. at 24.) Turley testified that appellant indicated "either [she was] going to give it to [him] or [he was going to take] it." Id. Turley attempted to run for the door, screaming. As she approached the door, appellant grabbed her by the throat and began to choke her. Appellant threw Turley onto the futon and continued to choke her. While he was strangling Turley on the futon, appellant admonished her to shut up and take her clothes off.
 {¶ 5} Appellant and Turley continued to wrestle, moving Turley into the back corner of the room. She begged appellant to leave her alone, promising him that she would not mention the incident if he did not harm her. Subsequently, appellant grabbed Turley's hair, telling her he was going to punch her if she did not take off her clothes. Turley took off her clothes and appellant demanded that she lie down. After Turley complied, appellant had vaginal intercourse with Turley. Turley continued to kick and cry, trying to make as much noise as she could while appellant restrained her. Appellant then attempted to perform oral sex on Turley, as she continued to plead for him to stop. Appellant stopped and declared, "That wasn't as good as I thought it was. I don't understand how somebody fighting could be good anyway, you know, it's not something you want." Id. at 27. Appellant admonished Turley, telling her to put on her clothes and lie down. Appellant also told her not to tell his aunt about the incident. Turley complied, stating that she feared for her safety if she did otherwise.
 {¶ 6} A few minutes later, Clardy entered the family room and noticed Turley was shaking and crying. (Id. at 28.) Clardy asked appellant if he raped Turley, to which appellant denied doing anything. Clardy asked Turley whether appellant had raped her, and Turley answered "yes." Id. at 28. Clardy walked to the kitchen to use the telephone to call the police. As Clardy left the room, appellant rode away from the house on a bicycle.
 {¶ 7} Turley testified that the Mifflin Township Police arrived approximately ten minutes after Clardy called the police. Thereafter, Turley was transported to the hospital. When asked about the extent of her injuries, Turley testified that appellant gouged his fingernails across her neck, and she received a bruise on the right side of her leg when she was thrown onto the futon.
 {¶ 8} Clardy also testified on behalf of the State. She indicated that on the date of the incident, Yazmin and Cameron woke her up to tell her that appellant raped Turley. Clardy testified that Yazmin was crying when she and Cameron spoke with her, and that her children appeared "traumatized." (Id. at 102.) Clardy entered the family room and noticed Turley was crying and appeared to be very frightened. She queried appellant about whether he had raped Turley, and he indicated that nothing happened. Based on her observation of Turley's demeanor, Clardy told appellant that she did not believe him. Thereafter, Clardy called the police.
 {¶ 9} On cross-examination, Clardy was questioned about her initial statement to the police, in which she stated that Yazmin told her that Turley stated appellant had raped her. Clardy also admitted that she never heard any signs of a struggle between Turley and appellant and that they were sitting together fully clothed when she entered the family room. Clardy testified that she took Turley's side without having direct knowledge of what occurred between appellant and Turley.
 {¶ 10} Thirteen-year old Cameron Clardy ("Cameron") testified about the incident. He was asleep in the living room, and woke up to Turley screaming, "no this and no that," and "crying like she was trying to call for help." Id. at 142. Cameron heard appellant respond "no, no, you are not going nowhere." Id. at 154. Cameron walked into the family room and saw appellant and Turley pulling their pants up. He observed that Turley looked scared and appellant appeared nervous. Cameron asked Turley if she needed any water, to which she declined. Cameron went back into the living room to lie down. After he continued to hear noises, Cameron went into the kitchen to get some water. Cameron then retrieved a crowbar, because "he knew Bobby was raping Tara," and went back to the family room entrance. Id. at 143. Cameron went into Yazmin's room to tell her what he saw. Cameron testified that he and Yazmin then walked to Clardy's room and Yazmin told her that appellant raped Turley. After Clardy confronted appellant and he denied raping Turley, Cameron testified that he heard Clardy call appellant a liar.
 {¶ 11} Deputy Marty Michael Martin ("Martin") of the Franklin County Sheriff's Office responded to a rape call at 2556 Agler Road on the date of the incident. Upon his arrival, he met a black female at the door, who appeared "pretty excited, crying" and "she just kept saying over and over again that he did it, he hurt her * * *." Id. at 112. Martin also came in contact with the children, who were screaming and crying that "he did it, he hurt her and now he's gone." Id. at 113. Martin then interviewed Turley and filled out an official report. He testified that she "was shaking all over, stuttering, hair in disarray, clothes in disarray." Id. Martin filled out an official report. He also took pictures of Turley's neck injuries, which depicted abrasions and lacerations with blood.
 {¶ 12} Ms. Sheryl Minke ("Minke"), a registered nurse at Riverside Methodist Hospital, testified as an expert regarding the proper procedure used for a sexual assault examination. Regarding the instant case, Minke testified that she examined Turley on September 20, 2002. Minke offered that Turley was alert and cooperative. Minke conducted an external examination, noting that Turley had some abrasions and redness behind her right knee and on her neck. Minke also completed an internal exam, which later confirmed that appellant's semen was inside Turley's vagina. Minke prepared records detailing her examination of Turley.
 {¶ 13} Upon the conclusion of the State's case, appellant's trial counsel did not move for a Crim.R. 29 acquittal. Instead, after resting the defense case, where no witnesses or evidence was presented, appellant's trial counsel moved for a Crim.R. 29 acquittal on the attempted rape, which was denied. After the conclusion of trial, the jury found appellant guilty of rape and kidnapping, and not guilty of attempted rape.
 {¶ 14} On appeal, appellant first argues that he was afforded ineffective assistance of counsel. Appellant's statement of his first assignment of error is incomplete, and fails to set forth a basis for his argument that his trial counsel was ineffective. Nor does he present a statement of issues for our review. See App.R. 16(A). However, we are able to interpret the basis of appellant's first assignment of error by reviewing the arguments set forth in his brief regarding his ineffective assistance of counsel claim.
 {¶ 15} In order to succeed on his claim of ineffective assistance of counsel, appellant must satisfy a two-prong test.Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674. Initially, appellant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Id. However, an error by counsel, even if unreasonable under prevailing professional standards, does not warrant setting aside a judgment unless the error affected the outcome of the trial. Id. at 691.
 {¶ 16} Thus, under the second prong of Strickland,
appellant must show that counsel's deficient performance prejudiced the defense. Id. This factor requires showing that but for counsel's unprofessional errors, a reasonable probability existed that the result of the trial would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 17} In addressing the two-prong test found inStrickland, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697.
 {¶ 18} In support of his first assignment of error, appellant argues that his trial counsel was ineffective by failing to object to certain trial testimony. Appellant first contends that his trial counsel was ineffective by failing to object to Clardy's testimony that she believed appellant raped Turley, and that she did not believe appellant when he denied harming Turley. On cross-examination, Clardy admitted that in her statement to the police, Clardy offered that Yazmin told her that Turley said appellant raped her. Appellant contends that Turley's statement to Yazmin that she was raped, and Yazmin's subsequent statement to Clardy that Turley told Yazmin she was raped, constitute double hearsay.
 {¶ 19} The State argues contra that both Yazmin and Turley's statements would fall under the excited utterance exception to the hearsay rule. Evid.R. 801(C) defines hearsay as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." According to Evid.R. 803(2), excited utterances, or "statements relating to a startling event or condition made while the declarant [is] under the stress of excitement caused by the event or condition" are excluded from the hearsay rule.
 {¶ 20} In State v. Taylor (1993), 66 Ohio St.3d 295, 300,612 N.E.2d 316, the Supreme Court of Ohio reaffirmed the four-part test to determine the admissibility of an excited utterance: "(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such dominationcontinued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration." (Emphasis sic.) Id. at 300-301, quoting Potter v. Baker (1955), 162 Ohio St. 488,124 N.E.2d 140, paragraph two of the syllabus.
 {¶ 21} The admission or exclusion of evidence including the determination of whether a declaration should be admitted as an excited utterance, is within the sound discretion of the trial court. State v. Ducey, Franklin App. No. 03AP-944,2004-Ohio-3833, at ¶ 18. Here, we find that Turley, Cameron and Yazmin's statements constitute admissible excited utterances. The altercation between Turley and appellant was an occurrence sufficient enough to produce a nervous excitement in Turley, Cameron and Yazmin.
 {¶ 22} In addition to Turley's description of the incident, Cameron and Clardy both testified that Turley was crying and appeared very frightened after the altercation. Further, Clardy testified that Yazmin was crying when she told Clardy that Turley had been raped, and that both children appeared traumatized. Finally, Martin testified that the children were screaming and crying when he arrived at the scene. We find the evidence indicated that Turley and Yazmin were "under the stress of excitement" of the altercation between Turley and appellant, and that their declarations demonstrate the unreflective and sincere expression of their actual impressions and beliefs.
 {¶ 23} Even if we assume, however, that Clardy's testimony was based on inadmissible hearsay, counsel's failure to object does not rise to the level of ineffective assistance of counsel. The State cites State v. Jackson, Franklin App. No. 02AP-867,2003-Ohio-6183, arguing that that the failure to object to testimony is not necessarily an indicator of ineffective assistance of counsel, because the decision not to object may be for tactical reasons. Id. at ¶ 81, citing State v. Gumm (1995),73 Ohio St.3d 413, 428, 653 N.E.2d 253. The State asserts that trial counsel opted to impeach Clardy through cross-examination rather than objecting to her direct testimony. In support of its position, the State refers to various portions of Clardy's cross-examination, in which appellant's trial counsel exposed the weaknesses in Clardy's direct testimony.
 {¶ 24} We agree with the State's position. Appellant's trial counsel is entitled to a strong presumption that all of his decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998), 81 Ohio St.3d 673, 675,693 N.E.2d 267. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance of counsel. State v. Carter (1995),72 Ohio St.3d 545, 558, 651 N.E.2d 965. Here, we find that trial counsel's tactical decision to expose the weakness in Clardy's testimony on cross-examination rather than objecting to her direct testimony was not deficient.
 {¶ 25} Additionally, appellant contends that counsel was deficient by not objecting to portions of Cameron's testimony. Appellant argues that Cameron's testimony that he retrieved a crowbar because he believed Turley was being raped, and his testimony that his mother believed appellant was lying about not raping Turley is inadmissible and prejudicial.
 {¶ 26} The State contends that Cameron's testimony related to his belief that appellant raped Turley was admissible opinion testimony under Evid.R. 701, which provides:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.
 {¶ 27} In this case, Cameron woke up from noises coming from the family room, which he perceived to be Turley screaming "no to this and no to that." (Tr. at 42.) He also heard Turley crying and trying to call for help. When he arrived at the family room door, Cameron saw appellant and Turley pulling their pants up. He observed that Turley looked scared and appellant looked nervous. We find that Cameron's opinion that Turley was raped was rationally based upon his perception of appellant and Turley. Further, Cameron's testimony was helpful to a clear understanding of the reasons for his conduct.
 {¶ 28} We do find, however, that Cameron's testimony as to his mother's belief that Turley had been raped constituted inadmissible hearsay, for which there is no exception. However, in applying the second prong of Strickland, we cannot say that a reasonable probability exists that, were it not for his counsel's error, the result of the trial would have been different. Strickland, at 691. The State's evidence consisted of testimony by Turley, describing her altercation with appellant and her fear for her safety. Further, Martin testified that Turley was "visibly shaken," Martin and Minke both testified as to abrasions on Turley's leg and neck, and Cameron testified that Turley was crying for help. Finally, Clardy testified as to her belief that appellant raped Turley; as such, we find that Cameron's testimony at issue is redundant. Thus, we find no prejudice, as appellant's counsel's failure to object to Cameron's testimony would not have resulted in a different verdict.
 {¶ 29} Finally, appellant argues that his trial counsel was ineffective for failing to request a continuance upon receiving the photographs. Appellant contends that had his trial counsel requested a continuance, he may have accepted the State's plea offer rather than go to trial. A review of the record indicates that the photographs were turned over to appellant's trial counsel the day of voir dire. The record does not disclose whether the plea offer was no longer available. Based on the record before us, we do not find that appellant's trial counsel was ineffective in not requesting a continuance once he received the photographs. Accordingly, appellant's first assignment of error is overruled.
 {¶ 30} In his second assignment of error, appellant argues that the prosecution violated Crim.R. 16(B)(1)(c) by not disclosing the photographs of Turley's injuries until the day before trial testimony began. Appellant argues that these photographs were subject to timely disclosure, regardless of whether or not they were within the State's possession. Further, appellant asserts that if the police have knowledge of the existence of the photographs, this knowledge can be imputed to the State. Appellant contends that he would have benefited from advance knowledge of the existence of the photographs, as his defense rested on consent and the absence of evidence of force.[3] Because the trial court allowed disclosure of these photographs, appellant contends that he was denied his right to a fair trial.
 {¶ 31} The State argues contra that the trial court acted well within its discretion in overruling the motion in limine to exclude the photographs. The State contends that by obtaining the photographs and immediately disclosing them to appellant's counsel, it acted in good faith. Further, the State argues that before the photographs were discovered, appellant was put on notice that evidence of Turley's injuries would be presented. Finally, the State argues that appellant fails to establish he was prejudiced. Even without the photographs, the State contends that Turley's injuries could have been established through Cameron, Martin and Minke's testimony.
 {¶ 32} Crim.R. 16 provides for discovery and inspection by either party in a criminal case. The purpose of Crim.R. 16 is to prevent surprise and the secreting of evidence favorable to one party. Lakewood v. Papadelis (1987), 32 Ohio St.3d 1, 3,511 N.E.2d 1138. Crim.R. 16(B)(1)(c) provides in part that the State must provide items that are "available to or within the possession custody or control of the State, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial * * *." Crim.R. 16(D) imposes a continuing duty to disclose additional material a party may discover prior to trial.
 {¶ 33} Crim.R. 16(E)(3) provides the trial court with a variety of sanctions that the court may impose on a party who fails to comply with a discovery request. When, as in this case, exclusion is sought as a sanction, courts should be reluctant to exclude relevant evidence, unless no lesser sanction would effectively accomplish the purpose of the discovery rules and preserve the parties' rights. Lakewood, supra, at 5.
 {¶ 34} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. In order to be admissible, evidence must be relevant. Evid. R. 402. Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
 {¶ 35} In support of its position, the State argues that appellant fails to satisfy the requirements set forth in Statev. Parson (1983), 6 Ohio St.3d 442, 445, 6 OBR 485,453 N.E.2d 689, in which the Supreme Court of Ohio developed a three-prong test to determine whether a trial court abuses its discretion in admitting previously undisclosed discoverable evidence:
Prosecutorial violations of Crim.R. 16 are reversible only where there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule; (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, or (3) the accused suffered some prejudicial effect.
Essentially, the State argues that even if it violated Crim.R. 16, under Parson, the timing of the disclosure of the photographs in this case does not warrant reversal. We agree.
 {¶ 36} In applying the first prong of Parson, to determine whether or not Crim.R. 16 was willfully violated, we evaluate the acts of the prosecution. State v. Wiles (1991),59 Ohio St.3d 71, 79, certiorari denied (1992), 506 U.S. 832, 121 L.Ed.2d 59,113 S.Ct. 99. In response to appellant's motion in limine, the State argued:
We were still in the process of picking a jury when I found out that I could get these pictures. I wasn't even aware of their existence until a few months ago when the victim said there were pictures taken of her, and I tried to get the detective to provide them to me. He was unaware of their existence. It wasn't until the Mifflin officer who took the pictures came and said, I got pictures, I will see if I can get them. I said, call, get them now. So he brought them down to me. As soon as I got them I showed [appellant's counsel]."
(Tr. at 69.)
Here, the record reflects that once the prosecution knew of the existence of the photographs, he acted in good faith by immediately obtaining possession of the photographs and turning them over to the defense. Accordingly, we find no evidence in the record to conclude that failure to timely disclose the photographs was willful.
 {¶ 37} Moreover, appellant has failed to demonstrate how earlier disclosure of the photographs would have benefited him in the preparation of his defense, or that he suffered prejudice by the timing of the disclosure of the photographs. In State v.Love (Nov. 17, 1992), Franklin App. No. 92AP-689, 1992 Ohio App. LEXIS 5809, we examined whether or not Crim.R. 16 was violated when the defendant was first informed of additional prosecution evidence at the start of voir dire. The defendant alleged that the trial court erred in admitting evidence that the prosecution failed to disclose during the discovery phase. In response, the prosecution argued that the language of Crim.R. 16(B)(1)(c) contained no specific disclosure requirements and that the defendant failed to avail himself of the right to inspect the evidence prior to trial. In affirming, we found that the prosecution had a duty under Crim.R. 16 to respond to defense counsel's requests for discovery by informing him of additional items it intended to enter at trial, but failed to do so.
 {¶ 38} Nonetheless, we found that based on the facts contained in the record, the defendant did not adequately explain how his rights were prejudiced by disclosure of the existence of the additional evidence immediately prior to voir dire. Although defendant's counsel argued he would have altered his voir dire questioning, we found that the record reflected he learned of the additional evidence prior to the start of voir dire, and could have addressed the issues in voir dire. Further, we found that counsel "did not take ameliorative actions that were readily available: he did not bring the evidence to the attention of thecourt prior to conducting voir dire, nor did he ask for acontinuance. Instead, counsel proceeded with voir dire, andraised the issue only after the jury had already been sworn." Id. at *11. (Emphasis added.) Finally, we concluded that even if the trial court should have excluded the additional evidence, "such error was harmless, because of the overwhelming evidence presented at trial establishing defendant's guilt." Id. at *12.
 {¶ 39} In this case, appellant has failed to demonstrate how foreknowledge of the photographs would have benefited his defense, or that the admission of the photographs resulted in prejudice. The record reflects that appellant's counsel learned of the photographs on the day of voir dire, and showed appellant the photographs that afternoon. (Tr. at 67.) However, appellant's counsel did not immediately bring the evidence to the court's attention. Instead, appellant's counsel first approached the court after the jury was impaneled and the first witness began to testify. (Tr. at 67.) Nor did appellant's counsel seek a continuance. After the trial court denied appellant's motion in limine, the judge asked if there were "any other motions or issues that need to come up." (Tr. at 70.) Appellant's trial counsel raised no other issues and instead proceeded with trial.
 {¶ 40} Based on the facts gleaned from the record, we find the trial court did not abuse its discretion in allowing the photographs into evidence.
 {¶ 41} Appellant further contends the State's failure to timely disclose the photographs of Turley's injuries violatesBrady v. Maryland (1963), 373 U.S. 83, 88, 83 S.Ct. 1194,10 L.Ed.2d 215. "Suppression by the prosecution of evidence that is favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87; State v. Lamar, 95 Ohio St.3d 181, 2002-Ohio-2128,767 N.E.2d 166, at ¶ 27, certiorari denied, 537 U.S. 1057,123 S.Ct. 632, 154 L.Ed.2d 537.
 {¶ 42} "Evidence suppressed by the prosecution is `material' within the meaning of Brady only if there exists a `reasonable probability' that the result of the trial would have been different had the evidence been disclosed to the defense." Statev. Johnston (1988), 39 Ohio St.3d 48, 529 N.E.2d 898, rehearing denied, 40 Ohio St.3d 707, 534 N.E.2d 850, later proceeding,64 Ohio App.3d 238, 580 N.E.2d 1162, paragraph five of the syllabus. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles v.Whitley (1995), 514 U.S. 419, 434, 115 S.Ct. 1555,131 L.Ed.2d 490.
 {¶ 43} Appellant contends that his due process rights were violated by the State's failure to disclose evidence that may be to the benefit or the detriment of appellant. As a result, appellant asserts that he was denied his right to a fair trial because the photographs materially changed appellant's case. In support of his position, appellant cites State v. Henderson
(June 9, 2000), Hamilton App. No. C-990657, 2000 Ohio App. LEXIS 251, at *6, stating that the Brady rule "applies equally to impeachment evidence, which, if disclosed by the state and used properly by the defense, may make the difference between conviction and acquittal."
 {¶ 44} The State argues contra that appellant is not entitled to relief under Brady. The State asserts that Brady is inapplicable when the defense receives information before or during trial. The State cites United States v. Agurs (1976),427 U.S. 97, 103, 49 L.Ed.2d 342, 96 S.Ct. 2392, in which the Supreme Court opined:
The rule of Brady * * * arguably applies in three quite different situations. Each involves the discovery, after trial, of information which had been known to the prosecution but unknown to the defense.
 {¶ 45} We agree with the State's position. "Strictly speaking, Brady is not violated when disclosure occurs during trial, even when disclosure surprises the defendant with previously undisclosed evidence." State v. Iacona (2001),93 Ohio St.3d 83, 100, 752 N.E.2d 937. Here, the disclosure of the photographs was made early in the proceedings, before the jury was impaneled. Once the prosecutor became aware of the photographs, he immediately turned them over to the defense. Accordingly, we find no Brady violation occurred by allowing the admission of the photographs prior to trial.
 {¶ 46} Moreover, the photographs of Turley's injuries were not favorable to appellant. To the contrary, the photographs were cumulative evidence in support of Minke and Martin's testimony regarding Turley's injuries, which the trial court had discretion to admit. State v. Campbell (1994), 69 Ohio St.3d 38, 51,630 N.E.2d 339. We find there is no reasonable probability that the result of the trial would have been different had the photographs been disclosed to appellant prior to the day before trial. Accordingly, the record fails to demonstrate that appellant is entitled to relief under Brady. Appellant's second assignment of error is overruled.
 {¶ 47} Based on the foregoing, appellant's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and Brown, JJ., concur.
[1] Appellant refers to Clardy as his aunt.
[2] Yazmin was unavailable to testify because she passed away prior to trial.
[3] We note that the voir dire transcript was not provided for our review, and we therefore cannot discern whether trial counsel made statements to the jury about the evidence that would be presented, and/or the lack thereof. However, during the instructions to the jury, the judge defined the evidence to be considered in this case, which did not include counsel's remarks in voir dire. See State v. Garner (1995), 74 Ohio St.3d 49,59,656 N.E.2d 623. (Finding a jury is presumed to follow the instructions given by a trial judge.)