The STATE of Ohio, Appellee,

v.

MOESLE, Appellant.

[Cite as *State v. Moesle,* 181 Ohio App.3d 696, 2009-Ohio-1326.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–552.

Decided March 24, 2009.

Ron O'Brien, Franklin County Prosecuting Attorney, and John Cousins, for appellee.

Steven M. Brown and Sanjay K. Bhatt, for appellant.

Sadler, Judge.

{¶ 1} Defendant-appellant, Eric Moesle, appeals from the judgment of the Franklin County Court of Common Pleas, upon a jury verdict convicting him of theft, in violation of R.C. 2913.02. The relevant facts and procedural history follow.

{¶ 2} Appellant is an attorney who represented Custom Security, Inc. ("CSI") from 1998 to 2003. Andrew Conti was the president and sole shareholder of CSI. Conti testified that he decided to divorce his wife in late 2002 and was concerned that his wife would attempt to "freeze" CSI's assets during the divorce proceedings. He consulted appellant about how best to prevent that from happening so that CSI's business operations would continue unimpeded during the pendency of the divorce.

{¶ 3} Conti testified that he and appellant devised a plan whereby appellant would hold some of CSI's cash. Beginning in November 2002, Conti took 11 checks from CSI's vendors, made payable to CSI, and endorsed them over to appellant. Conti had been hiding these checks in a company safe.

{¶ 4} Appellant's version of events was significantly different. He testified that when the two men first discussed Conti endorsing CSI checks over to appellant, it was for the purpose of CSI becoming current on delinquent invoices for legal fees. Appellant testified that he had worked on 67 different legal matters for CSI in the preceding years, and, by November 2002, CSI owed him between $60,000 and $80,000 in fees. He testified that when Conti endorsed the first seven CSI checks over to him, he deposited them into his trust account, but applied the funds to the overdue legal bills. Appellant told the jury that after he had received the first seven checks, he informed Conti that the amount received to date totaled an amount meeting or exceeding the amount of legal fees that CSI owed. Appellant testified that Conti told him to take out whatever was owed for legal fees and "sit on the rest. 'If I need it later on, I'll ask you for it.'"

{¶ 5} At this point, appellant began to suspect that Conti was trying to hide company assets from his wife, but appellant subsequently accepted four additional checks. He conceded that this conduct was unprofessional. He deposited the last four checks into his business operating account instead of his trust account because he knew that these funds were not trust funds. The total amount of the 11 checks was approximately $121,000.

{¶ 6} On May 30, 2003, Conti filed a petition for dissolution of his marriage. Appellant represented him in the domestic-relations proceedings. In the dissolution proceeding, Conti's wife received no interest in CSI. On November 4, 2003, Conti paid appellant by personal check the legal fees associated with the domestic-relations work.

{¶ 7} Conti testified that in September or October 2003, he requested that appellant return the $121,000 in CSI funds that Conti had endorsed over to appellant. Conti later testified that he requested return of the funds in three pieces of correspondence dated December 11, 19, and 29, 2003. Appellant returned $64,454.40. Appellant continued to represent CSI until August 2004. Thereafter, Conti sold CSI. On January 5, 2006, the Franklin County Grand Jury indicted appellant on one count of theft, in violation of R.C. 2913.02(A)(2), which provides, "No person, with purpose to deprive the owner of property * * * shall knowingly obtain or exert control over * * * the property * * * [b]eyond the scope of the express or implied consent of the owner or person authorized to give consent."

{¶ 8} On March 25, 2008, appellant served a subpoena upon David Kelly, CSI's accountant and tax preparer, compelling Kelly to appear at the trial on March 28, 2008, and to bring copies of CSI's tax returns. The subpoena was served by leaving it at Kelly's place of residence pursuant to Crim.R. 17(D). The record also discloses, and it is undisputed, that Kelly also had actual knowledge of the subpoena, but advised appellant's counsel that he did not intend to appear. Though Kelly never sought to quash the subpoena, he indeed failed to appear.

{¶ 9} Trial began as scheduled. Appellant questioned Conti regarding how CSI had treated the funds in question for tax purposes. Conti testified that he did not know. Conti was unable to answer whether he possessed copies of CSI's tax returns for the specific tax years in question. However, he testified that he was sure Kelly did. On April 1, 2008, appellant made a motion for the issuance of a capias warrant to enforce the subpoena for Kelly's testimony.

{¶ 10} On April 3, 2008, during a lunch recess in the trial, the court held a brief discussion with counsel on the matter, after which it stated that it would not issue a capias warrant to enforce the subpoena. It indicated that it would instead hold a show-cause hearing after the trial. Trial resumed and, on April 4, 2008, following its deliberations, the jury returned a guilty verdict. Later, on April 18, 2008, the trial court held a show-cause hearing, at which Kelly appeared and testified. Ultimately, the trial court decided not to hold Kelly in contempt.

{¶ 11} On May 30, 2008, the trial court sentenced appellant to one year in prison, suspended the sentence, and placed appellant on probation for three years. It further ordered appellant to pay restitution in the amount of $53,000. Appellant timely appealed and advances two assignments of error for our review:

FIRST ASSIGNMENT OF ERROR:

Defendant-appellant's conviction was not supported by the evidence and was against the manifest weight of the evidence.

SECOND ASSIGNMENT OF ERROR:

The trial court's failure to issue a capias warrant or to take other measures to secure the testimony of a subpoenaed witness denied defendant-appellant his right to compulsory process as guaranteed by the Sixth Amendment to the United States Constitution and [Section 10, Article I] of the Ohio Constitution.

{¶ 12} We begin with appellant's second assignment of error, which is dispositive. Appellant argues that the trial court's refusal to enforce the subpoena issued to Kelly deprived appellant of his right to compulsory process. In the case of *Washington v. Texas* (1967), 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019, the United States Supreme Court explained:

The right of an accused to have compulsory process for obtaining witnesses in his favor stands on no lesser footing than the other Sixth Amendment rights that we have previously held applicable to the States. This Court had occasion in *In re Oliver*, 333 U.S. 257 [68 S.Ct. 499, 92 L.Ed. 682] (1948), to describe what it regarded as the most basic ingredients of due process of law. It observed that:

"A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel." 333 U.S. at 273 [68 S.Ct. 499, 92 L.Ed. 682], (footnote omitted).

The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

Id. at 18–19, 87 S.Ct. 1920, 18 L.Ed.2d 1019.

{¶ 13} In *State v. Ducey*, 10th Dist. No. 03AP–944, 2004-Ohio-3833, 2004 WL 1607310, we determined that the trial court had violated the defendant's right to compulsory process when it refused to enforce a subpoena for the testimony of a witness who the defendant intended to question for the purpose of showing that someone other than the defendant committed the offenses charged. Likewise, when the trial court in the present case refused to enforce the subpoena issued to Kelly, it violated appellant's right to compulsory process. Appellant has the right to enforcement of the subpoena to compel the attendance of a witness who may possess knowledge that is relevant to the theory of his defense. If Kelly indeed possesses knowledge that CSI treated the funds in question as business expenses for tax purposes, then, if his testimony were admitted and believed, this would advance appellant's theory that all of the money that he did not later return was

paid to him for legal services rendered, and, therefore, he did not "knowingly obtain or exert control over * * * [it] * * * [b]eyond the scope of the express or implied consent of the owner or person authorized to give consent." R.C. 2913.02(A)(2). Indeed, at the conclusion of the contempt hearing, the trial court recognized the relevance of the evidence appellant sought to present through enforcement of the subpoena, saying, "I do know that having heard the criminal trial, that the tax returns for the relevant years appear to me would have been highly relevant to the issues in that case."

{¶ 14} Appellee, the state of Ohio, argues that the trial court was justified in refusing to issue a capias warrant and that we must affirm that decision, because appellant never made a proffer as to what facts he believed Kelly's testimony and CSI's tax returns would demonstrate. For support of this proposition, appellee cites the case of *State v. Smith*, 168 Ohio App.3d 141, 2006-Ohio-3720, 858 N.E.2d 1222, in which the court held, "[W]here a subpoena is challenged, the defendant must make a 'plausible showing' of how the witness's testimony will be 'both material and favorable to his defense.'" Id. at ¶ 123. We note, however, that *Smith* and the Twelfth District case upon which it relied dealt with a motion to *quash* a subpoena, not a trial court's refusal to enforce an otherwise valid subpoena. Appellee also cites cases involving Evid.R. 103, which requires an offer of proof as a prerequisite to assigning error in the exclusion of evidence. Assuming that Evid.R. 103 applies, subsection (A)(2) of the rule states that an offer of proof is not required where the "substance of the evidence * * * was apparent from the context within which questions were asked."

{¶ 15} In this case, the subpoena clearly demonstrates that appellant sought CSI's tax records for the years involving the funds at issue. Moreover, appellant moved for the capias warrant only after questioning Conti about what tax treatment CSI had given to the $121,000 that Conti had given appellant, and Conti testified that he could not produce those records and did not know how CSI had treated the funds. From this, we conclude that it was apparent from the context within which questions were asked, and the trial court was aware of, the purpose for which appellant sought the information in the tax returns. Therefore, the requirement of a proffer is properly excused.

{¶ 16} Finally, appellee argues that reversal of appellant's conviction is not an available remedy for deprivation of the right to compulsory process because the trial court can—and in this case did—hold a contempt hearing. For support of this proposition, appellee cites the case of *State ex rel. Brady v. Russo*, 8th Dist. No. 89552, 2007-Ohio-3277, 2007 WL 1848720, in which the Eighth Appellate District held that mandamus would not lie to compel the enforcement of a subpoena duces tecum because a contempt motion constituted an adequate remedy at law. However, the subpoena in that case sought the appearance of an

assistant county prosecutor who possessed a videotape that the relator had unsuccessfully tried to use in his defense to criminal charges in an earlier trial; in an appeal following his conviction, the appellate court granted the relator a new trial solely because the trial judge had erroneously excluded the tape from evidence; and the second trial had not yet commenced when the relator served the subpoena. See *State v. Jackim*, 8th Dist. No. 87012, 2006-Ohio-4756, 2006 WL 2639444. The present case is different because here appellant sought enforcement *during* trial, while he was in the active pursuit of a defense to the charges against him. A contempt hearing did not provide appellant with an "adequate remedy" as it would have in *Brady*. In our view, our own *Ducey* case is more akin to the factual and procedural posture of the present case.

{¶ 17} Because the trial court deprived appellant of his constitutional right to compel the attendance of a witness in his defense, he is entitled to a new trial. *Ducey*, 2004-Ohio-3833, 2004 WL 1607310. Accordingly, appellant's second assignment of error is sustained. Our resolution of appellant's second assignment of error renders his first assignment of error moot.

{¶ 18} For all of the foregoing reasons, appellant's first assignment of error is moot, and his second assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BRYANT and KLATT, JJ., concur.